IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUBRINA TAYLOR, | : | |
| **Plaintiff** | : | **Civil No.  1:12-CV-0169** |
| | : | |
| **v.** | : | |
| | : | |
| HARRISBURG AREA COMMUNITY | : | |
| COLLEGE, | : | |
| | : | **Judge  Sylvia  H.  Rambo** |
| **Defendant** | : | |

## M E M O R A N D U M

In this employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, Plaintiff alleges that Defendant, her former employer, unlawfully discriminated against her because of her race and retaliated against her for filing a claim with the Equal Employment Opportunity Commission ("EEOC").  Presently before the court is Defendant's motion for summary judgment, wherein Defendant contends that Plaintiff failed to put forth evidence sufficient to submit any triable issue to the jury.  (Docs. 73 & 74.)  Because the court agrees that Plaintiff has failed to demonstrate that Defendant engaged in unlawful discriminatory or retaliatory practices in connection with her being denied a promotion and subsequently rehired, the court will grant Defendant's motion, enter summary judgment in favor of Defendant pursuant to Federal Rule of Civil Procedure 56(e)(3), and direct the clerk to close the case.

## I.        Background

In accordance with the standard of review for a motion for summary judgment, the court will "view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 353 (M.D. Pa. 2012) (citing *Hugh v. Butler*

*Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).  However, Plaintiff has not disputed the facts in this matter.  (*See* Doc. 99 (deeming Defendant's motion for summary judgment unopposed due to Plaintiff's failure to file any response).)[1] Therefore, it should come as no surprise that, with the exception of those facts submitted by Defendant but unsupported by the record, the court will adopt Defendant's statement of facts (Doc. 75) *in toto*.  *See* M.D. Pa. L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *accord U.S. ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 n.5 (3d Cir. 2005) (condoning district court's adoption of movant's statement of material facts when non-movant failed to comply with Local Rule 56.1); *Novinger Grp., Inc. v. Hartford Life & Annuity Ins. Co.*, Civ. No. 1:06-cv-0188, 2008 WL 5378288, *1 n.2 (M.D. Pa. Dec. 23, 2008) (adopting movant's statement of facts when non-movant failed to comply with Local Rule 56.1).

### A.    <u>Facts</u>

Plaintiff Dr. Subrina Taylor ("Plaintiff"), an African-American female, was previously employed by Defendant Harrisburg Area Community College ("Defendant" or "HACC"), a community college located within the Middle District of Pennsylvania, from July 1993 to June 2007.  (Doc. 75, ¶¶ 4, 11.)  Plaintiff was originally hired as a counselor/coordinator of special needs students, and was

---

[1] Local Rule 56.1 requires the non-moving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements."  M.D. Pa. L.R. 56.1.  Although certainly aware of the requirements, Plaintiff disregarded her obligation in its entirety by failing to submit a response to the motion, brief in support, or statement of facts, despite being granted numerous extensions in which to do so.  (*See, e.g.*, Docs. 80, 82, 88, 92 & 99.)

subsequently promoted to various positions.  (Doc. 75, ¶ 5; Doc. 56, ¶¶ 8-14; Doc.
57, ¶¶ 8-14.)  At the time of her resignation in 2007, Plaintiff was the Dean of
Enrollment Services, a position to which she was promoted in 2003.  (Doc. 56, ¶ 14;
Doc. 57, ¶ 14.)

       During the early years of Plaintiff's tenure at HACC, Dr. Edna Baehre
("Baehre"),[2] then President of the institution, thought that Plaintiff was bright,
articulate, creative, progressive, a "rising star," and had leadership potential.  (Doc.
75, ¶ 32; Doc. 75-3, pp. 16-17 of 47.)  In 2004, Baehre awarded to Plaintiff the
President's Award, which included a written commendation and a monetary bonus.
(Doc. 75, ¶ 6; Doc. 56, ¶ 16; Doc. 57, ¶ 16.)

       Baehre's positive assessment of Plaintiff was not everlasting.  During
2005, Baehre received comments from Plaintiff's direct supervisor, Alderman
Jackson ("Jackson"),[3] that Plaintiff, after coming back from leave following a
terminated pregnancy, had become "increasingly distracted," and was often
discussing her home life and marital problems within the workplace.  (Doc. 75-3, p.
19 of 47.)  In 2006, Jackson conducted an annual evaluation of Plaintiff which
identified problems in major areas, namely Plaintiff's dependability, and budgeting
and planning abilities.  (*Id*. at pp. 19-20 of 47.)  Baehre testified as follows with
regard to Plaintiff's questionable ability to complete tasks:

> [Plaintiff's] attendance record was beginning to become
> questionable. . . .  Oftentimes it was reported to me that she
> could not complete or did not complete them on time.

(*Id*. at p. 20 of 47.)

---

[2]  The court notes Baehre is a Caucasian female.

[3]  The court notes Jackson is an African-American male.

During her deposition, Baehre recounted specific instances that caused her to question Plaintiff's dependability. (*See* Doc. 75-3, p. 22 of 47.) Specifically, Baehre cited Plaintiff's failure to complete the budget portion of a grant proposal in a timely manner, despite Plaintiff's consenting to complete that task. (Doc. 75, ¶ 38; Doc. 75-3, p. 22 of 47.)

Jackson resigned, which created a vacancy for the Vice President of Student Affairs position, a position within Baehre's presidential cabinet. (Doc. 75-3, p. 21 of 47.) The vacancy was announced in 2006 and listed both required and preferred qualifications. (*Id.* at pp. 27-28 of 47.) Plaintiff applied for the vacant position. Baehre was the hiring manager, and Nancy Rockey ("Rockey"), another vice president, was appointed to be the chairwoman of the search committee for the position. (Doc. 75, ¶¶ 88-89.) Consistent with typical practices, the search committee initially screened the applicants' qualifications, and from the qualified applicants, selected individuals to receive an interview via telephone based on the preferred qualifications. (*See* Doc. 75-3, p. 28 of 47.) Following the telephonic interviews, the committee forwarded to Baehre and human resources a list of five individuals to receive an on-campus interview. (Doc. 75, ¶¶ 92-94.) Of the five finalists, Plaintiff was the only African-American and internal candidate (*id.* at ¶ 93; Doc. 75-5, p. 13 of 45) and had the highest score based on the qualifications matrix created by the committee (*see* Doc. 75-3, p. 29 of 47). Each of the final five candidates were interviewed by both the search committee and Baehre, and each met with members of the college community in an open session. (Doc. 75, ¶ 95.)

The evidence of record demonstrates that Plaintiff did not perform well during her on-campus interviews. (*See* Doc. 75-4, p. 10 of 29.) Tisa Riley ("Riley"),

4

the interim registrar at HACC who reported directly to Plaintiff, was "not shocked" that Plaintiff was ultimately not selected for the position. (Doc. 75-4, p. 19 of 29.) Riley testified that she was disappointed by Plaintiff's interview because Plaintiff did not answer the questions posed to her as well as she should have. (*Id.*) Similarly, Baehre testified that she was unimpressed with Plaintiff's performance, as Plaintiff focused her responses mainly on her past accomplishments. (Doc. 75, ¶ 41; Doc. 75-3, p. 33 of 47.)

During the interview process, Meredith Tulli ("Tulli"), the Executive Director of Human Resources, received an anonymous note alleging that Rockey had given inappropriate information to the search committee regarding Plaintiff's missing the deadline for a grant. (Doc. 75, ¶¶ 96-97; Doc. 75-5, pp. 17-18 of 45.) Tulli directed Deidre Lenker, the Director of Employee Relations, to interview the members of the committee. (Doc. 75, ¶ 99.) Ultimately, Tulli concluded that there were no issues and that Plaintiff had not been treated unfairly based on Rockey's comments because the comments were based on Rockey's own personal knowledge. (Doc. 75-5, p. 20 of 45.)

Baehre ultimately selected Dr. Winifred Black ("Black"), a Caucasian female, for the Vice President of Student Affairs position, based on there being many strengths and "very few weaknesses" identified for Black compared to Plaintiff.[4] (Doc. 75, ¶ 45; Doc. 75-3, p. 35 of 47.) After Black was selected, Tulli

---

[4] At her deposition, Baehre testified as follows regarding the comparison between Plaintiff and Black:

> In the case of [Plaintiff], for the most part, . . . there were strengths identified, but also more weaknesses than strengths in some of the feedback summaries.

(continued...)

5

and Baehre met with Plaintiff to explain the reasons for the decision.  (Doc. 75, ¶ 102; Doc. 75-5, p. 24 of 45.)  Baehre informed Plaintiff that neither she, nor the college community, believed Plaintiff was ready for the vice president position, but that she valued Plaintiff's work.  (Doc. 75, ¶¶ 43-44, 103-04.)  Baehre offered to mentor Plaintiff.  (Doc. 75-5, p. 25 of 45.)

Following the meeting, Plaintiff told Tulli that she believed she was not hired due to a conspiracy.  (Doc. 75-2, p. 10 of 20.)  However, during her deposition, Plaintiff admitted that she did not relay to Tulli that she believed the alleged conspiracy to be racially motivated.[5]  (Doc. 75-2, p. 11 of 20.)  Indeed, allegations of

---

(...continued)
   That confirmed my own assessment from the Search Committee – I mean, from the search interview with her, as well as my experience with her.
   [Plaintiff]'s performance had fallen way behind, especially after the terminated pregnancy, and I couldn't put somebody of that – into that position that did not demonstrate dependability and follow through and vision and leadership skills.
   What had become apparent that as long as we gave [Plaintiff] a task, she could conduct it and do it well, at least in the early years, *but she could not encompass the full scope of what would be required of that kind of position.*

Doc. 75-3, p. 35 of 47 (emphasis supplied).)

 [5]  Plaintiff testified as follows regarding the reason she believed Tilli should have inferred from her allegation that she believed the conspiracy to be racially motivated:

   And [Tulli], who is an HR director, who later became an HR vice president, who understands federally protected rights, she's not blind, she knows that I'm African-American, that's not a light statement, first of all, that anyone would make.  Secondly, an African-American.
      *       *       *
   It's [Tulli]'s job to ensure, since I am in a protected class, I mean, I guess — I mean, just think about what it means and the reason I need to be protected.

(Doc. 75-3, pp. 10-11 of 20.)

a race-based conspiracy first arose during Plaintiff's complaint filed with the EEOC in 2006.[6]  (*Id.*)

After Black assumed the Vice President of Student Affairs position, Tulli received complaints regarding Plaintiff's conduct during meetings, such as exhibiting emotional fragility, having inconsistent attendance, and failing to adequately perform.  (Doc. 75, ¶ 51; Doc. 75-3, p. 38 of 47; Doc 75-5, pp. 26-27 of 45.)  Moreover, Plaintiff appeared increasingly angry and paranoid.  (Doc. 75, ¶ 52; Doc. 75-3, p. 39 of 47.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission on October 6, 2006 ("2006 EEOC Charge"), in which she alleged that she was able to perform the responsibilities of the vice president position, was more qualified for the position than Black, was not promoted due to her race, and that any justifications for her non-selection offered by Defendant were merely a pretext to conceal discriminatory motive.  (*See* Doc. 56, ¶ 38.)  Plaintiff, Baehre, and Tulli participated in an EEOC mediation in December 2006 regarding Plaintiff's 2006 EEOC charge.  (Doc. 75, ¶ 111; Doc. 75-5, p. 30 of 45.)  During that mediation session, HACC expressed its desire that Plaintiff "move on" to a place where she would be happier.  (Doc. 75-5, p. 31 of 45.)  At the conclusion of the mediation

---

[6] During her tenure at HACC, Baehre appointed three African-Americans to vice president positions, and had appointed numerous African-Americans to dean positions. (Doc. 75-3, pp. 12-13 of 47.)

session, no formal settlement agreement was reached by the parties.[7]  (Doc. 75, ¶¶ 112-13; Doc. 75-5, pp. 30-31 of 45.)

After the mediation session, and despite the parties' failure to reach a formal settlement, Plaintiff called Jesse Thompson, a former colleague who had since taken employment at Bunker Hill Community College in Boston, Massachusetts ("Bunker Hill"), to express her interest in applying for a vice president position. (Doc. 75, ¶¶ 18-19; Doc. 75-2, p. 13 of 20.)  At some point before May 2007, Plaintiff accepted a two-year contract for the Vice President of Student Services and Enrollment Management position at Bunker Hill (Doc. 75-2, p. 15 of 20), but concealed her new position from HACC, as she was still negotiating a final settlement of the 2006 EEOC charge (Doc. 75, ¶ 55).  Baehre eventually learned that Plaintiff had accepted the position at Bunker Hill.  (*Id.* at ¶¶ 55-56; Doc. 75-3, p. 42 of 47.)  Baehre characterized Plaintiff's actions in this regard as "disrespectful" and "unprofessional," and further testified that Plaintiff's actions caused Plaintiff's relationship with HACC to become irreparable, as Plaintiff lost all credibility.  (Doc. 75, ¶ 58; Doc. 75-3, p. 42 of 47.)  Moreover, Baehre testified that Plaintiff "burned her bridges" at HACC by obtaining employment at another institution while still employed by HACC and attempting to negotiate a settlement.  (Doc. 75, ¶¶ 62-63; Doc. 75-3, p. 45 of 47.)  HACC terminated settlement discussions with Plaintiff, and the parties never reached a formal settlement agreement.  (Doc. 75, ¶ 113.)

---

[7]  The court is aware that Plaintiff has taken the position that she and HACC reached a settlement agreement.  However, the facts of record demonstrate that such a settlement was never reached.  (Doc. 75-3, p. 42 of 47; *see also* Doc. 75-2, p. 17 of 20.)  Plaintiff has failed to sustain her burden and submit evidence sufficient to rebut that of Defendant and demonstrate there exists a genuine issue as to whether a settlement was in fact reached regarding the 2006 EEOC charge.

At Plaintiff's request, HACC waived its general policy requiring that an individual provide three weeks notice prior to terminating his or her employment. (Doc. 75, ¶ 116; Doc. 75-5, p. 33 of 45.)  Plaintiff's last day of employment at HACC was June 1, 2007.  (Doc. 75, ¶ 115.)

Plaintiff's contract at Bunker Hill was not renewed, and following its expiration, Plaintiff had a failed attempt at establishing a consulting business.  (Doc. 75-2, p. 16 of 20.)  In 2009, Black resigned from the Vice President of Student Affairs position at HACC, and the same search protocol to fill the position was employed in 2009 as was employed in 2006.  (Doc. 75, ¶ 120; Doc. 75-5, pp. 39-40 of 45.)  Baehre was again the hiring manager, and she appointed Larry Adams as the chair of the search committee for the position.  (Doc. 75, ¶¶ 121-22.)  Plaintiff again applied for the position.  (*Id.* at ¶ 12.)  The search committee provided Human Resources with five applicants, one of which was Plaintiff, for further consideration, based on its initial review of the applicants' qualifications and telephone interviews. (*Id.* at ¶¶ 123-24.)  Baehre disqualified Plaintiff from consideration for the position and did not extend an offer for an on-campus interview based on her lack of trust and confidence in Plaintiff, due, in large part, to Plaintiff's actions in 2007 related to the manner of her separation from employment with HACC.  (*Id.* at ¶ 127; Doc. 75-5, p. 45 of 45.)   At her deposition, Baehre explained her reaction to Plaintiff's 2009 application as follows:

> I said to [Tulli], why would I want to interview [Plaintiff]. . . .  I had lost trust in [Plaintiff] the first time around [in 2007].  Nothing would give me any comfort that she would act any more professional than she did the first time around.

(Doc. 75-3, pp. 45-46 of 47.)  Following Plaintiff's disqualification, Robert Steinmetz III ("Steinmetz") was selected as the Vice President of Student Affairs and Enrollment Management in 2010.  (Doc. 75, ¶¶ 130-31.)

Plaintiff filed a charge with the EEOC in May 2010 ("2010 EEOC Charge") related to HACC not rehiring her for the position, in which she alleged that she was able to perform the responsibilities of the vice president position, was more qualified for the position than Steinmetz, was not hired due to her race, and that any justifications for her non-selection offered by Defendant were merely a pretext to conceal discriminatory motive.  (*See* Doc. 56, ¶ 55; Doc. 57, ¶ 54.)  Plaintiff further alleged that Defendant's not hiring her was in retaliation to her filing the 2006 EEOC Charge.  (Doc. 56, ¶ 55; Doc. 57, ¶ 54.)  Plaintiff received right-to-sue letters from the EEOC on both the 2006 and 2010 administrative charges.  (Doc. 56, ¶ 5; Doc. 57, ¶ 5)

## B.   Procedural History

Proceeding in this matter *pro se*, Plaintiff filed her original complaint commencing this civil action on January 30, 2012.  (Doc. 1.)  On March 21, 2012, Defendant filed a partial motion to dismiss (Doc. 17) and brief in support (Doc. 18), which requested dismissal of those parts of Plaintiff's complaint that related to Plaintiff's 2006 EEOC Charge[8] and her claim for punitive damages.[9]  On March 22, 2012, Plaintiff filed two "affidavits" in opposition to Defendant's motion, each of

---

[8]  Defendant based the portion of its motion to dismiss related to the 2006 EEOC Charge upon Plaintiff's failure to receive an official right-to-sue letter from either the EEOC or the Department of Justice as of the date of the complaint.  (Doc. 18, p. 9 of 12.)  This issue has not been raised herein.

[9]  Defendant based the portion of its motion to dismiss related to Plaintiff's request for punitive damages upon Plaintiff's failure to plead facts that supported a claim for punitive damages. (Doc. 18, p. 9 of 12.)

which were two pages in length and were composed of numbered paragraphs reiterating facts that had been alleged in the complaint, without citing any additional case law or authority. (*See* Docs. 19 & 20.) Although Plaintiff's filings left much to be desired by the court, in light of the court's obligation to construe such filings liberally due to Plaintiff's *pro se* status, the court denied Defendant's partial motion to dismiss on May 23, 2012. (Doc. 21.) Thereafter, the case was placed on a standard case management track with jury selection scheduled for January 7, 2013. (Doc. 24.)

On June 14, 2012, Defendant timely filed its answer, which, in addition to answering the allegations of Plaintiff's complaint, asserted thirteen affirmative defenses. (Doc. 27.) Subsequently, on June 26, 2012, Plaintiff filed an entirely new complaint docketed at Civil Action Number 1:12-cv-1212. This complaint was comprised of 139 paragraphs but added no new defendants, and the causes of action involved were based on essentially the same set of facts. Therefore, on July 3, 2012, this court issued an order consolidating the actions and deeming the complaint docketed at 1:12-cv-1212 to instead be an amended complaint in the captioned action. (Doc. 32.)

Following the court's denial of Plaintiff's motion for preliminary injunction (Doc. 36),[10] Defendant filed a motion to dismiss (Doc. 39) and brief in support (Doc. 40), to which Plaintiff responded (Doc. 42). Following Defendant's

---

[10]    Plaintiff's motion for temporary injunctive relief requested the court order Defendant to "re-employ [her] (along with benefits) [as the] Dean of Enrollment Management," or to "place Plaintiff back on Defendant's pay with benefits" if the court had any reservation about order[ing] Defendant to rehire Plaintiff. (Doc. 35, ¶¶ 57-58.) The court denied Plaintiff's motion after finding Plaintiff failed to establish any of the four factors guiding the court's inquiry as to the appropriateness of preliminary injunctive relief. (Doc. 36.)

timely filing of a reply brief (Doc. 45), Plaintiff filed an unauthorized sur-reply, in violation of Local Rule 7.7.  (Doc. 46).[11]

Before the court ruled on the fully-briefed motion to dismiss, James D. Young, Esquire, entered his appearance on Plaintiff's behalf.  (Doc. 50.)  Following a conference call with counsel, and upon Attorney Young's representing that Plaintiff intended to file a counseled amended complaint, the court entered an order deeming moot the ripe motion to dismiss.  (Doc. 52.)  Plaintiff filed her counseled amended complaint on November 2, 2012 (Doc. 56), after she was granted an extension of time in which to do so (Doc. 55), and Defendant filed its answer on December 20, 2012 (Doc. 57).  Thereafter, the court entered an order placing the matter on the November 4, 2013 trial list.  (Doc. 60.)

Over the course of the following months, the parties were granted numerous extensions of time in which to conduct discovery, including an order moving jury selection to January 6, 2014.  (*See* Doc. 67.)  On October 15, 2013, Defendant filed the instant motion for summary judgment (Doc. 73), brief in support (Doc. 74), and statement of material facts (Doc. 75).  On November 5, 2013, the date on which Plaintiff's response was due pursuant to Local Rule 7.6, Plaintiff filed a motion that requested an extension of time until November 12, 2013 (Doc. 78), which the court granted (Doc. 80).  On November 12, 2013, Plaintiff filed a second motion that requested an extension of time until November 22, 2013 (Doc. 81, ¶ 4), which the court granted (Doc. 82).  On November 21, 2013, Plaintiff filed a third motion that requested an extension of time until November 27, 2013 (Doc. 87), which the court granted (Doc. 88).  On November 27, 2013, Plaintiff filed a fourth

---

[11]  Defendant did not move to strike Plaintiff's filing, nor did the court do so *sua sponte*.

motion that requested an extension of time until December 2, 2013 (Doc. 89), which the court granted (Doc. 92).  Because the court still had not received a response from Plaintiff as of January 3, 2014, it granted Defendant's request to deem the motion for summary judgment as unopposed (Doc. 98), pursuant to Local Rules 7.6 and 56.1 (Doc. 99).  Thus, after more than 80 days since its filing, Defendant's motion for summary judgment is ripe for disposition.

II.          **Legal Standard**

In an employment discrimination case, the burden of persuasion on summary judgment remains "unalterably with the employer as movant."  *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).  The employer must "persuade [the court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor."  *Id.* Summary judgment is proper when the record, taken in its entirety, shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  *Id.*  When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same.  *Hugh*, 418 F.3d at 267.

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA*, 601 F.3d 212, 216 (3d Cir. 2010). The non-movant's burden in defending against summary judgment in a Title VII case is no different than in any other case, as the non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Syed*, 906 F. Supp. 2d at 354 (alteration in original) (citing *Celotex*, 477 U.S. at 324). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord Ullrich v. United States Sec'y of Veterans Affairs*, 457 F. App'x 132 (3d Cir. 2012). If the non-moving party's evidence "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (alteration in original) (quoting *Anderson*, 477 U.S. at 249-50). However, "[s]uch affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Rather, it remains the "province of the factfinder to ascertain the believability and weight of the evidence." *Id.* For purposes of considering a motion for summary judgment, the court "should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, [because] a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 285 (3d Cir. 2001) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)). The Third Circuit has noted, "Title VII does not have a corroboration requirement" and, therefore, the granting of summary judgment in a Title VII case cannot turn on a credibility determination because such determinations are for the finder of fact. *Durham Life Ins. v. Evans*, 166 F.3d 139, 147 (3d Cir. 1999).

## III.        Discussion

Plaintiff's claims are based on her allegations that Defendant discriminated against her based on her race in connection with her failure to be promoted to Vice President of Student Affairs in 2006 and failure to be rehired as Vice President of Student Affairs in 2010,[12] and retaliated against her based on her filing the 2006 EEOC charge in connection with her failure to be rehired as Vice President of Student Affairs in 2010. Title VII makes it an unlawful employment

---

[12] The basis of Plaintiff's two discrimination claims are identical, *i.e.*, that Defendant allegedly discriminated against her because she is African-American. Because many of the same operative facts are applicable to both claims, the court will analyze the claims together.

practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a).  Title VII also makes it unlawful for an employer to "discriminate against any of his . . . applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under "[Title VII]."  42 U.S.C. § 2000e-3(a).

Where no direct evidence of discrimination exists, a Title VII retaliation claim is analyzed under the familiar three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 702-03 (W.D. Pa. 2011).  Under the first step in the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a prima facie case of discrimination.  *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).  Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.  *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  This burden is "relatively light."  *Id.* (internal quotation marks omitted).  The third step shifts the burden of production back to the plaintiff to provide evidence from which a reasonable factfinder could infer that the employer's proffered justification was a pretext for discrimination.  *Id.* "At all times, however, the burden of persuasion rests with the plaintiff."  *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009).  At the summary judgment stage, to demonstrate that a pretext existed "the plaintiff must point to some

evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### A.   Plaintiff's Racial Discrimination Claims

In her second amended complaint, Plaintiff asserts a claim for employment discrimination, alleging that Defendant's 2006 and 2010 decisions not to select her as Vice President of Student Affairs was an adverse employment action that subjected her to discriminatory treatment on the basis of her race.  Defendant argues that Plaintiff has failed to meet her prima facie burden with respect to her claim for race-based employment discrimination.

### 1.   Plaintiff's prima facie case

As stated, the three-part test created by *McDonnell Douglas* requires, first, that a plaintiff prove a prima facie case of discrimination by a preponderance of the evidence.  To establish a prima facie case of Title VII race discrimination in a promotional decision, a plaintiff must prove that (1) she is a member of a protected class, (2) she was qualified and applied for the position, (3) she was rejected despite these qualifications, and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to hers to fill the position.  *Jones v. City of Phila. Fire Dep't*, No. 13-3764, 2014 WL 104978, *1 (3d Cir. Jan. 13, 2014) (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

It is undisputed that Plaintiff, as an African-American, is a member of a protected class. *See Tucker v. Thomas Jefferson Univ.*, 484 F. App'x 710, 712 (3d Cir. 2012). Moreover, it is undisputed that Plaintiff lost the Vice President of Student Affairs position to Black in 2006 and to Steinmetz in 2010, both of whom are not members of a protected class. However, these facts alone are insufficient to result in Plaintiff's meeting her prima facie burden.

A court considering a discrimination claim must evaluate "[the] plaintiff's qualifications for purposes of proving a prima facie case by an objective standard." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citing *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)). While objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skills, is better left to the consideration of whether the employer's nondiscriminatory reason for discharge is only pretextual. *Weldon*, 896 F.2d at 798. "Thus, to deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because [she] has failed to introduce evidence showing [she] possesse[d] certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext." *Sempier*, 45 F.3d at 729 (quoting *Weldon*, 896 F.2d at 798-99).

In the present case, Defendant argues that Plaintiff was not qualified for the position when she applied for it in either 2006 or 2009 because she lacked certain qualities, beyond the objective minimum and preferred qualifications. The evidence of record demonstrates that Plaintiff received promotions and was considered a "rising star" during the early years of her employment at HACC, but the evidence

also shows that Plaintiff's performance deteriorated during the course of her employment.  Although Plaintiff states her personal belief that her experience and performance at HACC made her qualified for the position in 2006, even she acknowledges that the hiring process requires an evaluation of a person's credentials and abilities beyond those set forth on her resume.

It is undisputed that Plaintiff had both the minimum qualifications necessary to advance beyond the screening phase for the position, which caused her to be selected for a telephonic interview, and many of the preferred qualifications, which caused her to be highly ranked by the search committee.  These qualifications resulted in Plaintiff's being one of five final applicants selected for the final round of in-person interviews.  However, it was during the in-person interviews when Plaintiff's performance faltered.  Baehre testified that Plaintiff's performance during these interviews did not provide confidence in Plaintiff's leadership abilities, a trait necessary for a Vice President of Student Affairs.  This sentiment was echoed by Riley, who also interviewed Plaintiff in 2006.  Additionally, the college community's assessment of the candidates in terms of strengths and weaknesses demonstrated that Black was perceived as a stronger candidate than Plaintiff. Significantly, Baehre was also aware of issues with Plaintiff's dependability, another trait certainly required for a member of her cabinet.

While Defendant's argument is certainly supported by the record, the court cannot find the absence of a genuine issue of material fact.  Defendant does not contend that Plaintiff lacked the minimum requisite objective qualifications for the vice president position; rather, Defendant contends that Black possessed certain subjective qualities rendering her better suited for the position.  Because Plaintiff's

testimony disputes that she did not have, *inter alia*, adequate leadership abilities, the court believes this contention is better left for consideration at the pretext stage of the *McDonnell Douglas* analysis. Accordingly, the court finds that, for purposes of summary judgment review, a genuine issue of material fact exists as to whether Plaintiff was qualified for the vice president position.

To satisfy the fourth prong of the prima facie case, a plaintiff must establish that "similarly situated individuals outside the plaintiff's class were treated more favorably [than she]." *Blackwell-Murray v. PNC Bank*, Civ. No. 12-cv-5319, 2013 WL 4042500,*10 (E.D. Pa. Aug. 8, 2013) (citing *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010)). Alternatively, the plaintiff must prove that she was treated "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999). "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Sarullo*, 352 F.3d at 798 (quotation marks omitted). To establish the fourth prong, the plaintiff must submit evidence adequate to create an inference that an "employment decision was based on a[n] [illegal] discriminatory criterion." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977).

Although neither the 2006 nor 2009 Vice President of Student Affairs position was filled by a person not of Plaintiff's protected class, Plaintiff fails to present any evidence that Defendant's hiring decisions were racially motivated. Indeed, the evidence of record reveals that, during Baehre's tenure, multiple African-

Americans were appointed to vice president and dean positions within the institution. The evidence of record does not support Plaintiff's allegation that she was not promoted due to a racial conspiracy, an allegation Plaintiff made for the first time to the EEOC.

To the extent the allegations underlying the anonymous note regarding Rockey's alleged inappropriate comments could be interpreted as differential treatment motivated by racial discrimination, the record establishes that Defendant commenced an investigation, wherein it ultimately concluded that the comments were not inappropriate. Moreover, members of the HACC community certainly could provide greater insight into Plaintiff's abilities, as Plaintiff was the only internal applicant of the five individuals selected for in-person interviews.

In short, Plaintiff has not satisfied the fourth element of her prima facie case. She presents no evidence of racial comments or racially motivated behavior. Further, she fails to create any inference of discrimination by showing that she was treated less favorably because of her race. Given the complete dearth of evidence, the court does not find the existence of any genuine issue of material fact on this point and concludes that Plaintiff has failed to establish her prima facie case of discrimination.

Based on the foregoing, the court concludes that a genuine issue of material facts exists regarding whether Plaintiff was qualified for the vice president vacancies. Assuming she was so qualified, Plaintiff has failed to establish that she suffered discrimination because of her race, as the record lacks sufficient evidence tending to prove that Defendant's employment decisions to appoint Black or Steinmetz to the vacant vice president positions were based on illegal discriminatory

criterion.  Because Plaintiff has failed to sustain her burden of establishing her prima facie case, Defendant's motion for summary judgment will be granted.

## 2.   **Defendant's Nondiscriminatory Reason and Pretext**

Even assuming *arguendo* that Plaintiff could establish a prima facie case, her claim of disparate treatment founders at the final step of the *McDonnell Douglas* analysis.  As noted above, once a plaintiff sets forth a prima facie case of discrimination, the burden shifts to the employer to set forth a legitimate non-discriminatory reason for the challenged adverse employment action.  All the employer need do at this juncture is introduce admissible evidence that, if taken as true, would "*permit* a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons."  *Mitchell v. Miller*, 884 F. Supp. 2d 334, 370 (W.D. Pa. 2012) (emphasis in original); *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (stating that the employer's burden of production at this stage is "relatively light, and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision" (internal quotation marks omitted)).

Defendant has offered legitimate, non-discriminatory reasons for not promoting Plaintiff in 2006 and not rehiring her in 2010, namely that Plaintiff was not the most qualified individual for the position.  Specifically, with regard to Defendant's hiring Black in 2006, Defendant submitted evidence that Baehre and members of the search committee and college community had concerns regarding Plaintiff's leadership capabilities and dependability.  With regard to Defendant's hiring Steinmetz in 2010, Defendant submitted evidence that, in addition to the 2006 concerns, Plaintiff had irreparably damaged her relationship with, *inter alia*, Baehre

due to the method in which she left employment at HACC in 2007.  As Defendant has met its burden of production in the case, the burden shifts back to Plaintiff to establish a genuine issue of material fact, which requires Plaintiff to present evidence from which a factfinder could infer that Defendant's proffered nondiscriminatory reasons for not selecting her for the 2006 or 2010 vice president positions were a pretext for racially discriminatory motives.  *School Dist. of Phila.*, 198 F.3d at 410.

To demonstrate pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a . . . determinative cause of the adverse employment action."  *Fuentes*, 32 F.3d at 762. To meet that burden, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken."  *Id*. at 765.  The fact that an employer made a poor or unwise decision does not make that decision discriminatory.  *See Brewer v. Quaker State Oil. Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason . . . so long as it is not a discriminatory reason.").  Evidence undermining an employer's proffered legitimate reasons therefore must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier*, 45 F.3d at 731.  A plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a determinative cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class."  *Collins v. Boyd*, No. 13-1739, 2013 WL 5458054, *7 (3d Cir. Oct. 2, 2013) (citing *School Dist. of Phila.*, 198 F.3d at 413).  However, a plaintiff

cannot establish liability upon the "jury's mere *disbelief* of the defendant's proffered reasons for an adverse employment action." *Blackwell-Murray*, 2013 WL 4042500 at *13 (emphasis in original) (citing *Mitchell*, 884 F. Supp. 2d at 370).  Rather, liability must be based upon the "jury's *affirmative belief* of the plaintiff's contention that the action was taken on the basis of an impermissible discriminatory criterion." *Id.* (emphasis in original) (citing *Mitchell*, 884 F. Supp. 2d at 370).

Defendant argues that Plaintiff has failed to produce evidence demonstrating that its proffered reasons for not selecting Plaintiff for the vice president position was a pretext.  The court agrees.  Indeed, the only "evidence" of record tending to support Plaintiff's position that she was not promoted for a reason other than those articulated by Defendant is in the form of her own testimony articulating her perception of her own abilities.[13]  (*See* Doc. 75-2, pp. 6-7 of 20.) Although Plaintiff may be skeptical of Defendant's reasons, Plaintiff's subjective assessment stands unsupported by any evidence of record and is nothing more than mere conjecture, a basis upon which Plaintiff may not rely when opposing summary judgment.

Additionally, Defendant argues that Plaintiff fails to show by a preponderance of the evidence that racial motivation was a determinative cause of

---

[13]  When asked directly whether it was possible that Defendant did not see her as vice president material for a nondiscriminatory reason, Plaintiff responded:

> I don't think that's possible. . . . [A]t that time[,] I was so good at my game.  I was meeting my objectives.  I was politically astute.  I was staying out of the trouble spot as much as I could.  I was keeping in good with [Baehre's] inner circle because I knew that was important.  I was presenting, I was making the college look good.  I clearly - - - I got the role.  I understood the role.

(Doc. 75-2, pp. 6-7 of 20.)

Defendant's decisions to hire Black or Steinmetz.  A plaintiff can establish pretext by "point[ing] to evidence with sufficient probative force as to lead a factfinder to conclude that the employer has previously discriminated against [the plaintiff], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Selvanathan v. Opportunities Indus. Ctr. Int'l*, 871 F. Supp. 2d 349, 363 (E.D. Pa. 2012) (alterations in original) (internal quotation marks omitted) (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998)); *see also Vera v. Pennsylvania Higher Educ. Assistance Agency*, Civ. No. 09-cv-0341, 2013 WL 1178232, *10 (M.D. Pa. Feb. 26, 2013) (citing *Simpson*, 142 F.3d at 644-45).  Plaintiff fails to establish any evidence tending to establish that Defendant's decisions to hire Black or Steinmetz were racially motivated.

  First, the record does not contain evidence that Defendant previously discriminated against Plaintiff.  It is undisputed that Plaintiff was considered a "rising star" at HACC during the early years, was promoted, and received the President's Award in 2004.  Furthermore, when speaking with Plaintiff regarding Defendant's decision to hire Black in 2006, Baehre offered to act as a mentor to Plaintiff.  Thus, Plaintiff has not submitted any evidence of prior discrimination against her by Defendant.  Second, the record does not demonstrate that Defendant discriminated against other African-Americans.  Indeed, Jackson, Black's predecessor and the individual who initially indicated concern with Plaintiff's performance, was African-American.  Additionally, during her tenure, Baehre

appointed numerous African-Americans to vice presidents and dean positions.[14] Third, the record does not demonstrate that Defendant gave preferential treatment to non-African Americans.  Among the final applicants for the vice president position in both 2006 and 2010 were individuals of both sexes and a variety of races. The mere selection of a Caucasian female in 2006 and Caucasian male in 2010 – to fill a position voluntarily vacated by an African-American male – is insufficient to establish that Defendant treated more favorably similarly situated persons not within a protected class, especially considering the undisputed testimony that Plaintiff did not perform as well as the successful applicants.

In short, Plaintiff has set forth no basis on which a jury could find that Defendant's proffered legitimate, nondiscriminatory reason for not hiring her was pretext for racial discrimination.  Aside from the fact that there is no factual premise on which to disbelieve Defendant's proffered reason, there is also no evidentiary basis on which a jury could rest an affirmative belief that the employment decision was taken on the basis of an impermissible discriminatory criterion.  Accordingly, Plaintiff's discrimination claims fail this portion of the *McDonnell Douglas* analysis.

### 3.   Conclusion as to Plaintiff's Discrimination Claim

Given the foregoing, the court must grant Defendant's motion for summary judgment as to Plaintiff's Title VII discrimination claims.  As set forth in detail above, Plaintiff's prima facie case fails due to her inability to present evidence

---

[14]  The court is aware Plaintiff has morphed her claim into one alleging Defendant was prejudiced against African-American *females*.  Gender discrimination has not been alleged in her complaint.  To the extent this requires any additional attention, the court notes that the majority of the actors in this case, *i.e.*, Baehre, Black, Tulli, and Rockey, are female.  Indeed, neither Jackson nor Steinmetz, both of whom are males, had any input on Defendant's decision whether to hire Plaintiff in 2006 or 2010.

tending to prove that similarly situated individuals were treated more favorably than her or that her not being promoted occurred under circumstances giving rise to an inference of discrimination.  Moreover, even if Plaintiff could succeed on her prima facie case, she has failed to create any genuine issue of material fact regarding whether Defendant's legitimate, nondiscriminatory reasons for selecting Black – *i.e.*, that Baehre and other members of the HACC community questioned Plaintiff's leadership abilities, dependability, and ability to encompass the full scope of what would be required of that kind of position – or Steinmetz – *i.e.*, that, in addition to the 2006 concerns, Plaintiff lost all credibility due to her dishonesty in connection to her accepting the position at Bunker Hill – were mere pretext for discrimination.  In sum, based on the evidence of record, no reasonable jury could find that Plaintiff was discriminated against on the basis of race by Defendant.  Accordingly, judgment on these claims will be entered in favor of Defendant and against Plaintiff.

## B.     Plaintiff's Retaliation Claim

Count II of Plaintiff's complaint alleges that Defendant's decision to not hire her in 2010 was because of her race and was taken in retaliation for pursuing her rights by filing an EEOC complaint.   Under Title VII of the Civil Rights Act of 1964, an employer may not "discriminate against any of his . . . applicants for employment . . . because [the applicant] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

A Title VII retaliation claim is analyzed under the familiar three-step burden shifting framework of *McDonnell Douglas* set forth above.  *See Weightman*, 772 F. Supp. 2d at 703-04; *see also Bush v. Donahoe*, Civ. No. 11-cv-1287, 2013

WL 4045785, *18 (W.D. Pa. Aug. 8, 2013) (citing *Nolan v. Swartz Campbell, LLC*, Civ. No. 05-cv-1508, 2008 WL 598291, *18 (W.D. Pa. Feb. 29, 2008).[15]

## 1.   Plaintiff's Prima Facie Case

To establish a prima facie case of retaliation under Title VII, an employee must show that: (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action after or contemporaneous with the protected conduct; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Verma v. University of Pa.*, 553 F. App'x 115, 119 (3d Cir. 2013) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).  With respect to the third prong of this test, an employee asserting a claim of retaliation under Title VII "must establish that his or her protected activity was the but-for cause of the alleged adverse action by the employer." *Id.*; *University of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ____, ____, 133 S.Ct 2517, 2534 (2013).

Plaintiff contends that she engaged in a protected activity when she filed her formal complaint with the EEOC, charging Defendant with employment discrimination.  It is well established that the filing of an EEOC complaint is a protected activity.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); *Omari v. Waste Gas Fabricating Co.*, Civ. No. 04-cv-0696, 2005 WL

---

[15]   Under this framework, the plaintiff at the first step bears the burden of establishing a prima facie case of retaliation. *Weightman*, 772 F. Supp. 2d at 703 (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006); *see also McDonnell Douglas*, 411 U.S. at 802. "If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate non-retaliatory reason for the action." *Weightman*, 772 F. Supp. 2d at 703-04 (citing *McDonnell Douglas*, 411 U.S. at 802). "Upon doing so, the burden shifts back to the employee to show that the employer's proffered reason is pretextual." *Id.* at 704 (citing *McDonnell Douglas*, 411 U.S. at 804).

545294, *13 (E.D. Pa. Mar. 4, 2005). Therefore, Plaintiff clearly was engaged in a protected activity when she filed her 2006 EEOC complaint charging Defendant with race discrimination.

Plaintiff contends that she suffered an adverse employment action when Defendant failed to hire her in 2010. An adverse employment action is one which is serious enough that a reasonable employee would have found that the alleged retaliatory actions were "materially adverse in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 346 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The failure to hire qualifies as an adverse employment action. *See, e.g.*, *Davis v. School Dist. of Pittsburgh*, Civ. No. 10-cv-0061, 2012 WL 951857, *11 (W.D. Pa. Mar. 20, 2012); *St. John v. Donahoe*, Civ. No. 11-cv-2359, 2013 WL 1742397, *5 (citing *Burlington*, 548 U.S. at 68; *Moore*, 461 F.3d at 341). Therefore, Plaintiff clearly suffered an adverse employment action when she was not hired for the vice president position in 2010.

Plaintiff contends that her filing the 2006 EEOC complaint was the reason Defendant did not hire her for the vice president position in 2010. Causation can be shown through temporal proximity between the protected activity and the adverse employment action, an intervening pattern of antagonism, or the evidence taken as a whole. *Davis*, 2012 WL 951857 at *11 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)).

The court was not presented with any evidence that the temporal proximity between the protected activity and the adverse employment action was unusually suggestive of retaliatory motive. Plaintiff engaged in her protected

activity on October 6, 2006, when she filed her complaint with the EEOC alleging racial discrimination.  The decision not to hire Plaintiff for the vice president position was made in late 2009, approximately three years later, which does not suggest that it was related to her filing of the EEOC charge.  *See, e.g.*, *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (holding two months between protected activity and adverse employment action was not unduly suggestive).  In cases such as this one where "the temporal proximity is not so close as to be unduly suggestive," the Third Circuit has recognized that "timing plus other evidence may be an appropriate test."  *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003); *Davis*, 2012 WL 951857 at *11.  Here, as discussed above, there is no other evidence that Defendant failed to hire Plaintiff because of her protected activities.  The proximity of nearly three years between the last protected activity and an adverse employment action does not unduly suggest retaliation.

Similarly, the court was not presented with any evidence involving a pattern of antagonism regarding Plaintiff's Title VII protected activities.  Within two months of Plaintiff's filing of her 2006 EEOC complaint, Defendant engaged in a mediation session that, although not resulting in an agreement, yielded a preliminary settlement discussion that was extremely favorable to Plaintiff.  A final settlement may have come to fruition but-for Plaintiff's decision to accept a position at Bunker Hill while still employed by Defendant and still trying to negotiate final terms.  Despite Plaintiff's actions, which caused the relationship between Plaintiff and Defendant to become irreconcilable, Defendant waived the three-week notice requirement and was flexible with Plaintiff's schedule to clean out her office.

Indeed, the record certainly does not support a pattern of antagonism following Plaintiff's filing of her 2006 EEOC complaint.

Finally, when taken as a whole, the evidence certainly does not support the inference of causation.  Rather, the record establishes that Plaintiff's performance, both as Dean of Enrollment Services and during the interview for the Vice President of Student Affairs position in 2006, was less than stellar. Specifically, the record demonstrates that, early in Plaintiff's career, Baehre thought Plaintiff was impressive.  However, Plaintiff's performance deteriorated, as noted by Jackson's performance evaluation of Plaintiff as well as Plaintiff's actions related to the grant.  Although Plaintiff was a strong candidate on paper, she failed to perform well during her interview, and her leadership abilities and dependability were doubted.  Nevertheless, although Baehre selected Black for the position, Baehre met personally with Plaintiff, explained the hiring decision, and offered to act as a mentor.  The record does not establish that Plaintiff's filing of the 2006 EEOC complaint changed her relationship with Defendant, let alone caused Defendant to not hire her in 2009.  Rather, the record demonstrates that Plaintiff's decision to mislead Defendant during the settlement negotiations was the reason Baehre lost trust and confidence in Plaintiff and justifiably did not want Plaintiff in her cabinet. Plaintiff offered no evidence to support an inference that she was not hired in 2009 in retaliation for her filing the EEOC complaint in 2006.[16]

---

[16]   The court also finds unsupported Plaintiff's allegations that she was "constructively terminated" from Defendant.  (Doc. 56, ¶ 39.)  Indeed, nothing in the record tends to establish Plaintiff's leaving HACC was a result of constructive discharge.  For the same reasons the record fails to support a pattern of antagonism, the record fails to demonstrate Plaintiff endured a hostile work environment so intolerable a reasonable person subject to them would resign.  *See Owens v. Allegheny Valley Sch.*, 869 F. Supp. 2d 653, 660 (W.D. Pa. 2012).

### 2.   Conclusion as to Plaintiff's Retaliation Claim

Based upon the record before the court, no reasonable jury could conclude that there was a causal link between the October 2006 EEOC complaint and the failure to hire Plaintiff as vice president in late 2009.  Because the record contains insufficient evidence to show a causal connection as required to support a Title VII retaliation claim, the court will grant the motion for summary judgment with respect to the Title VII retaliation claim.

## IV.      Conclusion

Based on the foregoing, the court finds that, based on the evidence of record, there exists a genuine issue of material fact as to whether Plaintiff possessed all the subjective qualifications for the Vice President of Student Affairs positions in both 2006 and 2009.  However, Plaintiff failed to present any evidence tending to establish that Defendant's decisions not to promote Plaintiff in 2006 or to rehire her in 2009 were racially motivated.  Thus, the court concludes that Plaintiff failed to establish her prima facie burden with regard to her racial discrimination claims.  The court further concludes that, even had Plaintiff established her prima facie burden, she failed to offer any evidence tending to cast doubt upon each of Defendant's legitimate nondiscriminatory reasons for its employment decisions or present evidence to otherwise support an inference that discrimination was more likely than not a cause of Defendant's employment decisions.  Accordingly, the court will grant judgment in favor of Defendant and against Plaintiff on both of Plaintiff's claims for racial discrimination.

Furthermore, after a thorough review of the record, the court concludes that no genuine issue of material fact exists concerning Plaintiff's claims for

retaliation.  The court finds that Plaintiff has failed to establish any causal connection between her filing the 2006 EEOC complaint and Defendant's decision to not hire her in 2009.  Accordingly, the court will grant judgment in favor of Defendant and against Plaintiff on Plaintiff's claim for retaliation.

In conclusion, because the court finds that no genuine issue of material fact exists and concludes that Defendant is entitled to judgment as a matter of law as to each of Plaintiff's claims, the court will grant Defendant's motion for summary judgment in its entirety.

An appropriate order will issue and be docketed separately.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  January 30, 2014.

33